IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: ASBESTOS LITIGATION ) | |
| ) | |
| ELIZABETH ALICE DOVE, as Personal ) | |
| Representative of the Estate of GUS DOVE ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 17-56-MN-SRF |
| v. ) | |
| ) | |
| BOEING COMPANY, et al., ) | |
| ) | |
| Defendants. ) | |

**REPORT AND RECOMMENDATION**

### I. INTRODUCTION

Presently before the court in this asbestos-related wrongful death action is a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 filed by Honeywell International, Inc.[1] ("Honeywell"). (D.I. 151) For the following reasons, I recommend GRANTING Honeywell's motion for summary judgment.[2]

### II. BACKGROUND

**A. Procedural History**

On December 10, 2016, plaintiff Gus Dove ("Mr. Dove"), originally filed this personal injury action against multiple defendants in the Superior Court of Delaware, asserting claims arising from Mr. Dove's alleged harmful exposure to asbestos. (D.I. 1, Ex. 1) On January 19, 2017, the case was removed to this court by defendant Lockheed Martin Corporation ("Lockheed

---

[1] Honeywell International, Inc. is the successor in interest to Allied Signal, Inc., the successor in interest to the Bendix Corporation. (D.I. 152 at 1)
[2] Honeywell's opening brief in support of its motion for summary judgment is D.I. 152, plaintiff's answering brief is D.I. 163, and Honeywell's reply brief is D.I. 172.

Martin") pursuant to 28 U.S.C. § 1442(a), the federal officer removal statute.[3] (D.I. 1) Mr. Dove passed away on May 17, 2017. (D.I. 54) His daughters, Elizabeth Alice Dove ("Ms. Dove") and Roxane Audrey Huey ("Ms. Huey") were named as personal representatives of the Estate of Gus Dove and substituted as plaintiffs in this matter. (D.I. 62) Ms. Huey has since passed away and was removed as a personal representative and plaintiff on September 12, 2018. (D.I. 163 at 1; D.I. 129) On October 30, 2018, Honeywell filed its pending motion for summary judgment. (D.I. 151) Plaintiff filed her answering brief on November 13, 2018. (D.I. 163) The court heard oral argument on Honeywell's pending motion for summary judgment on January 14, 2019.

### B. Facts

#### i. Mr. Dove's Alleged Exposure History

Plaintiff alleges that Mr. Dove developed lung cancer and other asbestos-related diseases, causing "extensive mental anguish, pain and suffering, medical bills, physical impairment, permanent disability, loss of earning capacity, loss of enjoyment of life, and loss of life." (D.I. 129 at ¶¶ 17-18) Plaintiff contends that Mr. Dove was injured due to exposure to asbestos-containing products that Honeywell mixed, mined, manufactured, distributed, sold, removed, or installed. (*Id.* at ¶ 15) Accordingly, plaintiff asserts claims for negligence, willful and wanton conduct, strict liability, and conspiracy. (*Id.* at ¶¶ 20-96)

Mr. Dove was deposed on April 6, 2017. (D.I. 28) Plaintiff did not produce any other fact or product identification witnesses for deposition.

---

[3] The federal officer removal statute permits removal of a state court action to federal court when, *inter alia*, such action is brought against "[t]he United States or an agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office." 28 U.S.C. § 1442(a)(1).

2

Mr. Dove served in the United States Air Force from 1951 to 1971. (D.I. 152, Ex. B at 261:10-14) He was enlisted in September 1951 and started his eight weeks of basic training at Sampson Air Force Base. (*Id.* at 261:15-25) In November 1951, he transferred to Tyndall Air Force Base and attended tech school to become a cook. (*Id.* at 262:19-25) Then, in March 1952, Mr. Dove was stationed at Elmendorf Air Force Base, where he was an airman second class. (*Id.* at 263:12-18) From April 1952 through April 1953, Mr. Dove was part of the early warning station in Alaska, where he was an airman second class and cook. (*Id.* at 271:2-12; 272:1-5)

From April 1953 through April 1958, Mr. Dove served at Moody Air Force Base, where he entered as an airman second class, and finished as an airman first class. (*Id.* at 272:9-12; 272:16-19) Mr. Dove spent part of his time in "morale/welfare/recreation," where he had some photo hobby duties and automotive work duties. (*Id.* at 273:2-17) His automotive work was "shade-tree mechanic work." (*Id.* at 210:20-24) From 1954 to 1956, he had approximately ten customers for whom he performed automotive work. (*Id.* at 210:13-15; 212:12-15)

After his five years of service at Moody Air Force Base, Mr. Dove was assigned to Chanute Air Force Base, where he trained to be an aircraft hydraulic repairman from April 1958 through July 1958. (*Id.* at 275:18-25; 276:2-8; 276:22-277:3) While stationed there, he worked on the B-52 for technical training. (*Id.* at 280:18-281:15) Mr. Dove continued his service in Lockbourne Air Force Base from July 1958 through June 1961. (*Id.* at 298:20-25; 327:6-12) When serving on Lockbourne Air Force Base, he changed brakes on many aircraft, including the KC-97, B-47, T-33, and DC-3. (*Id.* at 304:10-13; 315:22-316:4; 321:9-15; 325:4-12) Mr. Dove left Lockbourne Air Force Base in June 1961 and served on Forbes Air Force Base until May 1963. (*Id.* at 327:6-16; 331:7-23) On Forbes Air Force Base, he served as a staff sergeant,

3

where approximately half of his time was spent performing supervisory administrative tasks. (*Id.* at 327:23-25; 328:22-25)

Mr. Dove left Forbes Air Force Base in May 1963 for Karamursel, Turkey. (*Id.* at 331:7-332:2) He does not allege exposure to asbestos in Turkey. (*Id.* at 333:13-16) Following his return from Turkey in December 1964, he reported to Dover Air Force Base in January 1965. (*Id.* at 333:24-334:12) He served as a staff sergeant at Dover Air Force Base, performing both administrative duties and general maintenance on the C-141A, C-141B, C-124, C-133, and DC-3 aircraft, until August 1968. (*Id.* at 334:11-18; 335:1-336:17; 417:1-21) Following his service at Dover Air Force Base, Mr. Dove reported to Langley Air Force Base, where he entered as a staff sergeant and finished as a tech sergeant. (*Id.* at 347:21-348:8) The majority of his work entailed administrative duties, but he also performed some general maintenance on the C-130E and P-51. (*Id.* at 349:16-350:1; 353:14-23; 354:4-14; 379:1-15) He remained at Langley Air Force Base until he retired from the United States Air Force with an honorable discharge in September 1971. (*Id.* at 347:21-348:4)

Following his retirement from the United States Air Force, Mr. Dove was employed in the civil service on Dover Air Force Base, where he worked from July 1972 through 1976. (*Id.* at 382:16-19, 385:8-22) In 1979, he started working on the flight line, where he performed both administrative duties and aircraft maintenance until his retirement in January 1995. (*Id.* at 387:18-388:3; 388:11-390:5)

### ii. Plaintiff's Product Identification Testimony

For the purposes of the pending motion, the plaintiff's alleged asbestos exposure through automotive work is in issue. Mr. Dove testified that he performed "shade tree" automotive work, primarily brake work, from 1954 to 1956 when he was stationed at Moody Air Force Base. (D.I.

4

152, Ex. A at 28:3-25; Ex. B at 210:13-24) He performed automotive work in a shop that had one opening, a door, which remained open while he worked. (*Id.*, Ex. B at 226:11-21) Mr. Dove stated that he used Bendix brakes approximately ninety percent of the time, and Ford brakes approximately ten percent of the time. (*Id.*, Ex. A at 29:22-30:5) The Bendix brakes he used for automotive work were drum brakes. (*Id.*, Ex. B at 230:11-13)

At his video deposition, Mr. Dove testified that he performed approximately five brake jobs per week for two years. (D.I. 152, Ex. A at 29:1-11) He also stated that he knew he was working with Bendix brakes because the name was stamped in the lining and on the box. (D.I. 163, Ex. A at 33:11-15)

Mr. Dove's discovery deposition followed his video deposition. In his discovery deposition, Mr. Dove stated he had at least ten customers that he assisted with their automotive work from 1954 to 1956. (D.I. 152, Ex. B at 212:12-15) In addition, he stated he could not recall the brand name, trade name, or manufacturer name of the brakes he installed in vehicles. (*Id.* at 219:1-4) He could not describe the box that contained the brakes, except that "part of the box was yellow." (*Id.* at 219:17-24) When asked if he could remember any markings on the box, Mr. Dove testified that it said "Ford" across the box and had "Ford" stamped in the lining. (*Id.* at 219:25-220:11) He stated that each of the ten vehicles he worked on during this timeframe were Fords. (*Id.* at 220:18-21) He installed Bendix brakes on Dodge and Chevrolet vehicles no more than ten times. (*Id.* at 227:3-18; 230:6-10) Mr. Dove testified that the ten times he installed Bendix brakes from 1954-1956 were the only times he installed Bendix brakes in his lifetime. (*Id.* at 235:7-12) He recounted that the cleanup of the old drum from the old brake took him approximately eight hours for all four tires, or approximately two hours per tire. (*Id.* at 233:6-15) Before installing the new brake, he used sandpaper or a wire brush for about

5

fifteen minutes to smooth down each brake. (*Id.* at 234:6-12; 234:22-235:6) Mr. Dove noted that it took him approximately fifteen minutes to install a new brake on each wheel. (*Id.* at 233:16-22)

### III. LEGAL STANDARD

#### A. Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that could affect the outcome of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The moving party bears the initial burden of proving the absence of a genuinely disputed material fact. *See Celotex*, 477 U.S. at 321. The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial, and the court must view the evidence in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460-61 (3d Cir. 1989); *Scott v. Harris*, 550 U.S. 372, 380 (2007). An assertion of whether or not a fact is genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce

admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). To defeat a motion for summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" rather, there must be enough evidence to enable a jury to reasonably find for the non-moving party on the issue. *See Anderson*, 477 U.S. at 247-49. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex*, 477 U.S. at 322. If the non-movant fails to make a sufficient showing on an essential element of its case on which it bears the burden of proof, then the movant is entitled to judgment as a matter of law. *See Celotex*, 477 U.S. at 322.

If a party fails to address another party's assertion of fact, the court may consider the fact undisputed, or grant summary judgment if the facts show that the movant is entitled to it. Fed. R. Civ. P. 56(e)(2)–(3).[4]

---

[4] This section was added to Rule 56 to overcome cases in the Third Circuit that impaired the utility of the summary judgment device:

> A typical case is as follows: A party supports his motion for summary judgment by affidavits or other evidentiary matter sufficient to show that there is no genuine issue as to a material fact. The adverse party, in opposing the motion, does not produce any evidentiary matter, or produces some but not enough to establish that there is a genuine issue for trial. Instead, the adverse party rests on averments of his pleadings which on their face present an issue.

Fed. R. Civ. P. 56(e) advisory committee's note. Before the amendment, the Third Circuit would have denied summary judgment if the averments were "well-pleaded," and not conclusory. *Id.* However, the Advisory Committee noted that summary judgment is meant to pierce the pleadings and to assess proof to see whether there is a genuine need for trial. *Id.* Accordingly, the pre-amendment Third Circuit precedent was incompatible with the basic purpose of the rule. *Id.* The amendment recognizes that, "despite the best efforts of counsel to make his pleadings

### B. Delaware Law

The parties do not dispute that Delaware law applies to all claims. (D.I. 114) Under Delaware law, a plaintiff asserting a claim for asbestos-related injuries must introduce evidence showing a product nexus between his exposure to a defendant's product and his asbestos-related injuries. *Cain v. Green Tweed & Co.*, 832 A.2d 737, 741 (Del. 2003) (citing *In re Asbestos Litig.*, 509 A.2d 1116, 1117 (Del. Super. Ct. 1986), *aff'd sub nom. Nicolet, Inc. v. Nutt*, 525 A.2d 146 (Del. 1987)).

Delaware courts have not followed the "frequency, proximity, and regularity" test,[5] first set forth in *Lohrmann v. Pittsburgh Corning Corp.*, 782 F.2d 1156 (4th Cir. 1986), which has been adopted as the test in numerous jurisdictions. *Happel v. Anchor Packing Co.*, 2010 WL 7699063, at *1 (E.D. Pa. Oct. 14, 2010). Delaware courts require a plaintiff show that he was in proximity to the product at the time it was being used. *Nutt v. A.C. & S. Co.*, 517 A.2d 690, 692 (Del. Super Ct. 1986). Plaintiff must show "that the asbestos product was used in an area where the plaintiff frequented, walked by, or worked adjacent to, with the result that fibers emanating from the use of the product would have been present in the area where the plaintiff worked." *Cain*, 832 A.2d at 741. This standard "requires plaintiff [to] show 'some evidence' of both 'daily and continuous proximity' to defendant's product for more than a *de minimis* period of time." *In re: Asbestos Litig.*, 2017 WL 237617, at *2 (Del. Super. Ct. Jan. 17, 2017) ("*Hastings*"). "Implicit within this product nexus standard is the requirement that the particular

---

accurate, they may be overwhelmingly contradicted by the proof available to his adversary." *Id.* The amendment, however, was not designed to affect the ordinary standard applicable to summary judgment. *Id.*

[5] The court, in *Lohrmann*, stated that to support a reasonable inference of substantial causation from circumstantial evidence, there must be evidence of exposure to a specific product on a regular basis over some extended period of time in proximity to where the plaintiff actually worked. *Lohrmann*, 782 F.2d at 1162-63.

8

defendant's product to which the plaintiff alleges exposure must be susceptible to releasing fibers which are capable of ingestion or respiration into the plaintiff's body." *In re Asbestos Litig.*, 2007 WL 1651968, at *19 (Del. Super. Ct. May 31, 2007), *as corrected* (June 25, 2007) (quoting *Merganthaler v. Asbestos Corp. of America*, 1988 WL 116405, at *1-2 (Del. Super. Ct. Oct. 25, 1988)).

This standard, known as the "product nexus standard," is meant to ensure that the plaintiff presents "a factual connection in space and time between a particular plaintiff and a particular defendant's product." *Id.* (quoting *Merganthaler*, 1988 WL 116405, at *1-2) "Delaware courts have held that a plaintiff can survive summary judgment if there is testimony that asbestos-containing products were used at a worksite during the time plaintiff was employed there." *Happel*, 2010 WL 7699063, at *1. However, it is insufficient to overcome summary judgment if the "time and place" testimony is based on speculation or conjecture. *Id.* (citing *In re Asbestos Litig.*, 509 A.2d at 1117-18).

IV. DISCUSSION

    A. Negligence Claim – Mr. Dove's Exposure to a Bendix Asbestos-Containing Product

        i. Bendix Aircraft Brakes

Honeywell argues that it did not manufacture, supply, sell, or distribute brakes for the C-141A, C-130E, C-5A, C-5B, B-47, C-124, or KC-97. (D.I. 152 at 8-10) Honeywell admits that it manufactured brakes for the B-52, but asserts that these linings were cerametallic and did not contain asbestos. (*Id.* at 10) (citing D.I. 152, Ex. C) Plaintiff does not contest Honeywell's assertions regarding Bendix aircraft brakes in its opposition brief. (*See* D.I. 163) During oral argument, plaintiff noted that she would stipulate to no asbestos exposure from Bendix aircraft brakes. (1/14/19 Tr. at 5:7-11) Therefore, the court need not address plaintiff's allegations of

exposure arising from defendant's aircraft brakes, which are dismissed by agreement of the parties.

### ii. Bendix Automotive Brakes

The court recommends granting Honeywell's motion for summary judgment with respect to Honeywell's liability for plaintiff's injuries allegedly caused by asbestos-containing Bendix automotive brakes. Plaintiff claims that Honeywell supplied asbestos-containing brakes, and that Mr. Dove was exposed to this asbestos when he performed automotive work while stationed at Moody Air Force Base. (D.I. 129 at ¶ 14; D.I. 163 at 2-3) Plaintiff further claims that Bendix drum brakes contained asbestos until at least 1983. (D.I. 163 at 5-6; Ex. C at 52:10-14) Mr. Dove was deposed on two separate instances on April 6, 2017. (*See, e.g.*, D.I. 152, Ex. A; Ex. B) Mr. Dove's description of the frequency of his automotive brake work differs between his video deposition testimony and his discovery deposition testimony.

In Mr. Dove's video deposition, he testified:

> Q: Okay. And on average over those two years, how many brake jobs were you doing –
> A: I'd say ten.
> Q: –per week?
> Just let me finish the question before you answer, please.
> Were you doing ten brake jobs per week over those two years, on average?
> A: Oh, average. I'd save five, at least, average.

(D.I. 152, Ex. A at 29:1-10) In his discovery deposition, Mr. Dove testified:

> Q: Okay. Do you recall the amount of times during this two-year time period customers handed you Bendix brakes to install?
> A: I'd say the whole time it wasn't over 10.
> Q: Okay. And the 10 Bendix brake installations were drum brakes; correct?
> A: Yeah.
> . . .
> Q: The 10 times that you described installing Bendix brakes during this two-year time period, am I correct that that's the total amount of the times that you've worked with Bendix brakes during your lifetime?
> A: Yeah.

(D.I. 152, Ex. B at 230:6-13; 235:7-12) Plaintiff contends that "based on the Video Deposition testimony, Mr. Dove worked with Bendix brakes over 400 times over a two year period; and based on the Discovery Deposition testimony[,] Mr. Dove worked with Bendix brakes 10 times for 30 hours over a two year period." (D.I. 163 at 6) Honeywell argues that the Bendix exposure calculation of 400 times is the product of plaintiff's counsel's argument and is not supported by the record, having been elicited through improper leading questions.. (D.I. 152 at 13-15; D.I. 172 at 2-3) Plaintiff's counsel does not dispute that the calculation was his work product and is not a figure that appears in plaintiff's testimony. (1/14/19 Tr. at 16:4-10)

"While courts are required to draw every reasonable inference in favor of the party opposing summary judgment, they are not permitted to stack inference upon inference to preserve an issue for the jury." *Leonard v. Stemtech Health Sciences, Inc.*, C.A. No. 08-067-LPS-CJB, 2011 WL 6046701, at *8 (D. Del. Dec. 5, 2011) (quoting *Gregg v. Ohio Dep't of Youth Servs.*, 661 F. Supp. 2d 842, 859 (S.D. Ohio 2009)). Inferences must be supported by facts in the record, not by "speculation or conjecture." *Id.* (quoting *Miles v. Jones*, 2010 WL 5574324, at *7 (S.D. Fla. Nov. 22, 2010)). Here, plaintiff asks the court to support the inference that Mr. Dove worked with Bendix brakes approximately four hundred times, which is speculation based on his attorney's argument. (D.I. 163 at 5-6) Unlike the line of questioning at issue in *Hastings*, the questioning here is not merely "a clarification offered by counsel," but rather a "suggestive question[ ]." *Hastings*, 2017 WL 237617, at *2. Therefore, the issue before the court is whether plaintiff's alleged exposure to asbestos containing Bendix automotive brakes ten times during his work history is sufficient to create a factual issue concerning defendant's negligence and the proximate cause of plaintiff's injuries.

Delaware law has rejected the "frequency, regularity, proximity" test outlined in *Lohrmann* and, instead, a plaintiff is required to "proffer some evidence that not only was a particular defendant's asbestos containing product present at the job site, but also that the plaintiff was in proximity to that product at the time it was being used." *Hastings*, 2017 WL 237617, at *2 (quoting *Nutt*, 517 A.2d at 692). The Delaware standard "requires plaintiff [to] show 'some evidence' of both 'daily and continuous proximity' to defendant's product for more than a *de minimis* period of time." *Id.* (citing *Collins v. Ashland, Inc.*, 2009 WL 81297 (Del. Super. Ct. Jan. 6, 2009)). Plaintiff asserts that even if the court accepts that Mr. Dove performed only ten brake replacements over a period of two years, he still performed a significant amount of work on brakes in that time.[6] (D.I. 163 at 5-6) Honeywell, on the other hand, contends that Mr. Dove's exposure to Bendix brakes was *de minimis*. (D.I. 152 at 15)

Delaware courts have recognized that working with a specific manufacturer's product approximately six to nine times over the course of twenty years was *de minimis* and could not survive summary judgment. (D.I. 152, Ex. D at 29:4-19) (transcript of motion hearing for *In re: Asbestos Litig.*, Del. Super. Ct., July 12, 2018 ("*Reed*"), in which Judge Wharton granted summary judgment because exposure did not exceed Delaware's *de minimis* standard)[7] Honeywell also cites *In re Asbestos Litig.*, 2011 WL 6058302 (Del. Super. Ct. Nov. 16, 2011) ("*Gordon*") to support its assertion that Mr. Dove was exposed to its product for a *de minimis*

---

[6] Plaintiff urges the court to consider Mr. Dove's exposure within the span of the two years that he worked on automobiles on Moody Air Force Base, to the exclusion of other sources of alleged exposure over his lifetime, but the plaintiff has not supported this position with any citations to authority.

[7] Plaintiff cites to *In re Hickman v. A.W. Chesterton Co. (In re Asbestos Litig.)*, 2017 WL 4415744 (D. Del. Oct. 2, 2017) to support its argument that the court should deny Honeywell's motion for summary judgment. However, *Hickman* was decided before *Reed*, which analyzes Delaware's *de minimis* standard that is at issue in the present matter.

12

amount of time.[8] Although the court in *Gordon* applied Kansas law, the court analyzed and applied the *de minimis* standard to a plaintiff who interacted with the defendant's product approximately fifty times for one hour each for over forty-seven years. *Gordon*, 2011 WL 6058302, at *1-2. The court found there was insufficient evidence of frequent or regular exposure to asbestos, summarizing that "[o]ver the course of a lifetime, this averages out to a little over an hour per year that Gordon spent replacing automotive gaskets." *Id.* at *3.

Mr. Dove's exposure similarly does not meet the presence and proximity requirements under Delaware's product nexus standard. Mr. Dove claims exposure to Bendix brakes 10 times over the course of his forty-four year work history. Like the plaintiffs' exposures in *Reed* and *Gordon*, such exposure does not exceed Delaware's *de minimis* standard and the court recommends granting Honeywell's motion for summary judgment with respect to plaintiff's negligence claim.

### B. Punitive Damages Claim

The court recommends granting summary judgment with respect to plaintiff's punitive damages claim. In Count IV of the Second Amended Complaint, plaintiff alleges that Honeywell acted "willfully and wantonly for their own economic gain and with reckless indifference to the health and safety of [Mr. Dove] and others similarly situated." (D.I. 129 at ¶ 26)

Punitive damages are limited to situations where "a defendant's conduct is 'outrageous,' owing to 'gross negligence,' 'willful, wanton, and reckless indifference for the rights of others,' or behavior even more deplorable." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 493 (2008)

---

[8] Delaware has not defined its *de minimis* standard and Judge Wharton also considered *Gordon* when analyzing *de minimis* exposure to an asbestos-containing product under Delaware law in *Reed*. (D.I. 152, Ex. D)

13

(internal citations omitted). "Punitive damages are not intended to compensate the plaintiff for a loss suffered, but instead are 'imposed for purposes of retribution and deterrence.'" *In re Asbestos Prod. Liab. Litig. (No. VI)*, 2014 WL 3353044, at *11 (E.D. Pa. July 9, 2014) (quoting *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003)).

In support of her claim, plaintiff cites to Bendix's introduction of dust ventilation systems, respirators, and dust masks to protect its employees from asbestos inhalation in 1944. (D.I. 163 at 7; Ex. F at 59:14-20; 60:3-10) Additionally, plaintiff cites a letter from Bendix Products Corporation to Dr. Lanza in November 1932 that references four individuals' x-rays and recent exposure to silicosis. (*Id.* at 6-7; Ex. E) Plaintiff notes that Bendix did not place consumer warnings on its friction materials until 1973. (*Id.* at 7; Ex. F at 31:8-11) However, plaintiff's examples fall short of demonstrating that Honeywell knew or should have known about asbestos hazards at the time period in issue yet continued to sell products without warnings, in reckless disregard of the consequences. *See Relyea v. Borg Warner Corp.*, 2014 WL 6736781, at *1 n.1 (E.D. Pa. Oct. 1, 2014); *In re Asbestos Litig.*, C.A. No. 15-395-GMS-SRF, 2017 WL 3592451, at *8 (D. Del. Aug. 21, 2017). Therefore, the court recommends granting Honeywell's motion for summary judgment with respect to plaintiff's demand for punitive damages.

### C. Strict Liability

The court recommends granting Honeywell's motion for summary judgment with respect to plaintiff's strict liability claim. Since the Delaware Supreme Court's decision in *Cline v. Prowler Indus. of Maryland, Inc.*, 418 A.2d 968 (Del. 1980), Delaware courts have refused to extend strict liability to cases involving the sale of a product even where it is alleged that the product is inherently dangerous. *See Bell v. Celotex Corp.*, 1988 WL 7623 (Del. Super. Ct. Jan.

19, 1988); *Hammond by Hammond v. Colt Indus. Operating Corp.*, 565 A.2d 558 (Del. Super. Ct. 1989). In *Bell*, the court refused to apply a strict liability action because it found that the sale of asbestos products was not an abnormally dangerous activity, and that Delaware cases reject the concept of strict liability in the realm of sales. *Bell*, 1988 WL 7623, at *3; *see also Johnson v. Hockessin Tractor, Inc.*, 420 A.2d 154 (Del. 1980) ("The doctrine of strict tort liability has been pre-empted in this State in sales cases by the General Assembly's adoption of the Uniform Commercial Code."). Moreover, the motion for summary judgment on the strict liability claim is unopposed, as plaintiff failed to respond with any arguments or citations to authority to allow the claim to survive summary judgment. (*See* D.I. 163; 1/14/19 Tr. at 20:24-21:3) Therefore, the court recommends granting Honeywell's motion for summary judgment as to plaintiff's strict liability claim.

### D. Conspiracy

The court recommends granting Honeywell's motion for summary judgment with respect to plaintiff's conspiracy claim. In Count XII of the Second Amended Complaint, plaintiff alleges Honeywell, and other defendants, "agreed and conspired to commit fraudulent misrepresentation and/or negligent misrepresentation among themselves and with other asbestos manufacturers, distributors, and trade organizations, to injure the Plaintiff." (D.I. 129 at ¶ 63) "Civil conspiracy requires the combination of two or more persons for an unlawful purpose or for the accomplishment of a lawful purpose by unlawful means, which conspiracy results in damages." *Nutt*, 517 A.2d at 694 (internal citations omitted). In *Nutt*, the court ruled that a conspiracy claim is stated if it is alleged that an asbestos company "agreed with other asbestos companies to suppress knowledge of the dangers of asbestos; and pursuant to this conspiracy, the companies intentionally marketed their asbestos products without effective warnings; and that

15

the plaintiffs were injured by such products of at least one of the conspirators." *Nutt*, 517 A.2d at 695.

Honeywell's motion for summary judgment as to the conspiracy claim is unopposed, as plaintiff has failed to respond with any arguments or citations to authority to allow the claim to survive summary judgment. (*See* D.I. 163; 1/14/19 Tr. at 20:24-21:3) Therefore, the court recommends granting Honeywell's motion for summary judgment with respect to plaintiff's conspiracy claim.

## V. CONCLUSION

For the foregoing reasons, the court recommends granting Honeywell's motion for summary judgment. (C.A. No. 17-56, D.I. 151)

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objection and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: January 25, 2019

Sherry R. Fallon
United States Magistrate Judge